# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SLAT RACK LLC,                          )
                                        )
    Plaintiff,                      )
                                        )
                           )     No. 04 C 6035
vs.                                     )
                                        )     Judge Norgle
JOSEPH MULCAHY d/b/a TELEARTIST  )
and FUTONZ, INC. d/b/a FUTONZ. COM,  )     Magistrate Judge Schenkier
                                        )
    Defendants.                     )

## REPORT AND RECOMMENDATION

On September 16, 2004, plaintiff, Slat Rack LL, filed this action against defendants Joseph

Mulcahy (d/b/a Teleartist) and Futonz, Inc. (d/b/a Futonz.com). In its six-count complaint, Slat Rack

asserted federal trademark claims (Counts I-III), as well as supplemental state law claims under

Illinois law for trademark dilution (Count IV), deceptive trade practices (Count V), and unfair

competition (Count VI). All of Slat Rack's claims are based on defendants' alleged possession and

use of a domain name (rightonfutons.com), which Slat Rack claims violates its rights in the

registered trademark "RIGHT-ON FUTON."

Both defendants were served (doc. # 2), and both failed to appear or otherwise respond in the

case. By an order dated November 19, 2004, the presiding district judge granted Slat Rack's motion

for a default judgment against Joseph Mulcahy (d/b/a Teleartist), on Slat Rack's motion; the claims

against Futonz, Inc. (d/b/a Futonz.com) were dismissed without prejudice (doc. # 6). In that order,

the presiding district judge set the matter for a prove-up hearing.

Thereafter, by an order dated January 26, 2005, the case was referred to this Court for a

prove-up hearing and a report and recommendation on Slat Rack's claims for relief (doc. # 11). On

February 15, 2005, the Court convened an evidentiary hearing. The hearing proceeded without Mr. Mulcahy participating in the hearing, and without him receiving notice of the hearing. In light of the fact that Mr. Mulcahy was held in default for failure to appear, he was not entitled to notice of this proceeding for a prove-up on damages unless, in that proceeding, Slat Rack intended to assert[] new or additional claims for relief." *See* FED. R. CIV. P. 5(a); *Rice v. Mark IV Automotive*, No. 01-1255, 2002 WL 1397252, *2 (W.D. Tenn. June 11, 2002) (applying Rule 5(a) to hold that a defendant was not entitled to a hearing on damages after entry of a default judgment). And, here, Slat Rack has sought no relief beyond that outlined in the complaint.

At the prove-up hearing, Slat Rack offered (and the Court received) into evidence Exhibits 1-14 and 16-33 (the prove-up hearing exhibits will be cited as "PX __"). In addition, the Court received in-court testimony from two witnesses: Mark Bellow, plaintiff's owner, and Christopher J. McGeehan, plaintiff's counsel of record in this case.[1] The Court also has considered the factual allegations of the complaint, which the Court is obliged to accept as true in light of the default judgment. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994). And, the Court has considered the statement of attorneys' fees and costs that Slat Rack seeks to recover in this case, submitted in February 18, 2005, and the authorities offered by plaintiff in support of its request for statutory damages under 15 U.S.C. § 1117(d), submitted on February 15, 2005.

Based on the findings of fact and conclusions of law set forth below, the Court respectfully recommends that statutory damages be awarded to plaintiff in the amount of $30,000; that a

---

[1] The Court also has considered a declaration submitted by E. Christopher Caravette, a lawyer who represents in general legal matters, concerning cease and desist letters that he sent to defendants in April 2004 (PX 16). That declaration conforms to the requirements of 28 U.S.C. §1746, and thus is entitled to "like force and effect" as an affidavit. In this proceeding, in which defendant has failed to appear and thus has no right to a jury determination on damages, the Court has the authority to accept this declaration in the prove-up proceeding, as FED. R. CIV. P. 55(b)(2) authorizes the Court to "conduct such hearings . . . as it deems necessary and proper."

permanent injunction issue that enjoins Joseph Mulcahy (d/b/a Teleartist) and all agents, servants, employees, attorneys, and those in active concert or participation with him who receive actual notice of the order restraining them from infringing the RIGHT-ON FUTON trademark; that Mr. Mulcahy be ordered to transfer the domain name rightonfutons.com to Slat Rack; and, that Slat Rack be awarded $6,015.00 in attorney's fees and costs.

## I.

We begin with the findings of fact.

1.     Slat Rack LLC is a limited liability company organized under the laws of the state of Illinois. Slat Rack's principal place of business is 1184 North Milwaukee Avenue, Chicago, Illinois; it operates retail stores at that location and at 3012 North Lincoln Avenue, Chicago, Illinois. Mark Bellow one of the current owners of Slat Rack. Prior to April 25, 2002, Slat Rack was known under the name Monster Soup LLC. Slat Rack sells futons to the retail public.

2.     Defendant Joseph Mulcahy does business under the name Teleartist, out of a location 13353 West Oakwood Drive, Lockport, Illinois. In the balance of this opinion, Joseph Mulcahy d/b/a Teleartist will be referred to as "Mr. Mulcahy." Mr. Mulcahy was a registered agent of an Illinois corporation known as Tele Artist, Inc., which was incorporated on November 28, 2000 and was subsequently involuntarily dissolved on April 1, 2002. Mr. Mulcahy is the president of a corporation named Futonz, Inc., which was incorporated under Illinois law on February 18, 2003. Futonz, Inc. remains a corporation in good standing according to the Illinois Secretary of State's Records, but filed a voluntary Chapter 7 bankruptcy petition in the fall of 2004. At least prior to the bankruptcy petition, Futonz operated six retail stores in the greater Chicago area, which are located at 8238 South Cicero, Burbank, Illinois; 20579 South LaGrange Road, Frankfort, Illinois; 2524

3

North Harlem, Elmwood Park, Illinois; 14201 South Bell Road, Homer Glen, Illinois; 2843 North Clark Street, Chicago, Illinois; and 11525 South Pulaski Road, Alsip, Illinois. Futonz sold futons to the retail public.

3.      Since August 25, 1995, Slat Rack and its predecessors (including Monster Soup LLC) have used the trademark "RIGHT-ON FUTON" in Illinois. Since February 1, 1997, Slat Rack and its predecessors have continually used that trademark in the interstate commerce. On February 5, 2002, Mark Bellow (owner of Slat Rack) was issued a federal registration from the United States Patent and Trademark office for the trademark "RIGHT-ON FUTON," which issued as Registration No. 2,535,972 (PX 1). Shortly thereafter, Mr. Bellow assigned that trademark to Slat Rack.

4.      Slat Rack has a customer base that consists largely of 20- and 30-year olds in college or just starting out in their first independent housing, but also includes customers of other ages (PX 11). Slat Rack has taken steps to publicize the RIGHT-ON FUTON trademark both in Illinois and outside Illinois. These publicity efforts have included the prominent display of that trademark on Slat Rack's website (PX 3), and various promotional activities that have led to Slat Rack and its trademark being publicized in the *Chicago Tribune* and the *Chicago Sun Times* (PXs 5-8); in trade magazines (PXs 9-11); and on television segments carried on WGN, NBC and CBS (PXs 12-13). Based on the evidence submitted, Slat Rack has developed an image as a seller of high quality furniture using creative and low-pressure techniques to create an enjoyable shopping experience. These efforts have created significant good will for Slat Rack and significant association between Slat Rack and its trademark, RIGHT-ON FUTON.

5.      The website for Slat Rack is accessed by the domain name "rightonfuton.com" (*e.g.*, PX 3). On or about February 27, 2003, Teleartist obtained a registration for the domain name

4

"rightonfutons.com" (PX 14). The address listed for Teleartist is 13353 Oakwood Drive, Lockport, Illinois. That is also the address given in the Secretary of State records for Joseph Mulcahy in his capacity as president of Futonz, Inc. (PX 19). Mr. Mulcahy is listed as the administrative, technical and billing contact for Teleartist as the registrant of the domain name rightonfutons.com (PX 14).

6.     The only difference between the Slat Rack website name and the domain name registered by Mr. Mulcahy is the addition of the letter "s" to the Slat Rack trademark. At least as of April 2004, the domain name rightonfutons.com was set up so that anyone accessing that domain name would be redirected to futonz.com, the website for Futonz, Inc.

7.     When this fact came to the attention of Slat Rack, Slat Rack authorized its attorney, Christopher Caravette, to send a cease and desist letter, dated April 19, 2004, to Mr. Mulcahy and Futonz, Inc. demanding that they stop using the domain name rightonfutons.com, and transfer that domain name to Slat Rack (PX 16, ¶¶ 3-4). That letter was sent by first-class mail to each of the six Futonz, Inc. locations, and none of those letters was returned undelivered. The same letter was also sent to Mr. Mulcahy by certified mail, return receipt requested; that letter was returned unclaimed (PX 16, ¶¶ 5-6). For several months after that cease and desist letter was sent, Slat Rack received no communications from Mr. Mulcahy (PX 16, ¶ 7), and there was no change by Mr. Mulcahy or Futonz, Inc. in their use of the domain name rightonfutons.com.

8.     On June 21, 2004, plaintiff's counsel of record in this case, Mr. McGeehan, sent a cease and desist letter to Mr. Mulcahy by certified mail (PXs 20-21). That letter was received by Mr. Mulcahy on June 22, 2004 (PX 21). The letter informed Mr. Mulcahy of Slat Rack's trademark registration in the trademark RIGHT-ON FUTON, and enclosed a copy of the federal registration (PX 20). The letter informed Mr. Mulcahy of Slat Rack's claim that Teleartist and Futonz, Inc. were

5

infringing that mark by the use of the domain rightonfutons.com, and in particular, by the use of that domain name to redirect internet users who access that site to futonz.com, the website for Futonz, Inc. (PX 20). As relevant to this proceeding, the letter informed Mr. Mulcahy of the claim that this conduct violated 15 U.S.C. § 1125(d), which prohibits registration or use of domain names that are confusingly similar to distinctive trademarks with a bad intent to profit, and that violation of that provision would subject individual to statutory damages of not less than $1,000 or not more than $100,000 (PX 20). In the letter, Slat Rack demanded that Teleartist and Futonz, Inc. cease and desist use of the domain name, and transfer the domain name right to Slat Rack (PX 20). The letter set a deadline of July 2, 2004 for Mr. Mulcahy to act (PX 20).

9.      By July 1, 2004, Slat Rack had received no response from Mr. Mulcahy (PX 22). On that date, Slat Rack sent another letter to Mr. Mulcahy, as well as to each of the separate Futonz, Inc. locations (PX 22). The letter reiterated the claim of trademark infringement, noted that there had been no response to the cease and desist letter of June 21, and threatened to file a lawsuit the following week if the matter was not amicably resolved before then (PX 22).

10.      On July 3, 2004, Slat Rack sent an e-mail to Mr. Mulcahy again urging him to respond immediately if he wished to avoid litigation (PX 23). That e-mail included as attachments the prior letters of June 21 and July 1, 2004 (PX 23).

11.      On or about July 3, 2004, Slat Rack ascertained that Mr. Mulcahy and Futonz, Inc. had ceased use of the domain rightonfutons.com (Complaint, ¶ 16). Internet users who accessed that domain no longer were redirected to the futonz.com website. Instead, internet users who typed in the domain name rightonfutons.com would receive a blank screen. Prior to Teleartist's obtaining the domain name rightonfutons.com, an individual typing in that domain name would not be directed

to Slat Rack's website (Complaint, ¶ 14). Since July 3, 2004, Mr. Mulcahy has not made use of the rightonfutons.com domain name. There is no evidence of any loss sales by Slat Rack as a result of Mr. Mulcahy's use of the rightonfutons.com domain name; nor is there any evidence of actual confusion between Futonz, Inc. and Slat Rack as a result of Mr. Mulcahy's use of the rightonfutons.com domain name.

12.    On July 12, 2004, Slat Rack sent an e-mail to Mr. Mulcahy expressing appreciation at his "good faith gesture" in ceasing use of the rightonfutons.com domain name (PX 24). Slat Rack continued to demand that Mr. Mulcahy transfer the domain name to Slat Rack (PX 24). Slat Rack followed up the e-mail with a July 22, 2004 letter to Mr. Mulcahy, enclosing a proposed settlement agreement and transfer agreement for the domain name (PX 25). The settlement agreement asked for no monetary payment by Mr. Mulcahy, but required that Mr. Mulcahy acknowledge that the RIGHT-ON FUTON trademark as "good, valid and enforceable," and transfer the domain name (PX 25).

13.    By an e-mail of August 4, 2004, Mr. Mulcahy communicated with Slat Rack for the first time. In response to the July 12, 2004 e-mail, Mr. Mulcahy asked whether Slat Rack was interested in purchasing the domain name (PX 26). Slat Rack responded with an e-mail of August 6, 2004, indicating that it was not interested "in purchasing a domain that [Mr. Mulcahy has] registered in bad faith" (PX 27). On the same day, Mr. Mulcahy responded by stating that it was not "a crime to register a domain name" (PX 28). Mr. Mulcahy suggested that a nominal fee to him to transfer the domain could "save your client thousands of dollars in legal fees," and that he could "sell this domain in the morning to the highest bidder, but I would rather your client have it" (PX 28). Slat Rack did not respond to this e-mail and there appears to have been no further communication

7

between Slat Rack and Mr. Mulcahy prior to September 16, 2004, when plaintiff filed the complaint in this case.

14.     There is no evidence that Mr. Mulcahy has in fact assigned or otherwise transferred the domain name rightonfutons.com.

15.     On September 20, 2004, Futonz, Inc. filed a voluntary Chapter 7 petition for bankruptcy (PX 30).   That petition disclosed that in the one year immediately prior to the commencement of the bankruptcy, Joseph Mulcahy received $104,000 in money or property from Futonz, Inc. (PX 30).

16.     On or about October 12, 2004, a domain name "sitsleepstorage.com" was created (PX 33). That domain name accesses a website for a business named Bedding Experts, which sells furniture, including futons (PX 32). The administrative contact, technical contact and billing contact for the sitsleepstorage.com domain name is Mr. Mulcahy, at the 13353 Oakwood Drive, Lockport, Illinois address (PX 33).

## II.

In light of the foregoing findings, we set forth below the following conclusions of law.

1.     Although the complaint asserts six causes of action, at the prove-up hearing Slat Rack relied on one specific cause of action as the basis for the relief it seeks:  the Anti-Cyber Squatting Consumer Protection Act, known as "ACPA," codified at 15 U.S.C. § 1125(d). Under ACPA, the owner of a mark may establish liability on the part of anyone who

> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
> (ii) registers, traffics in, or uses a domain name that –

<blockquote>

(I)      in the case of a **mark that** is distinctive at the time of registration of the domain name, is identical or **confusingly** similar to that mark;

(II)    in the case of **a famous mark** that is famous at the time of registration of the domain name, is identical or **confusingly** similar to or dilutive of that mark; **or**

(III)   is a trademark, word, or name protected by reason of **Section 706** of Title XVIII or Section 220506 of Title XXXVI.

</blockquote>

15 U.S.C. § 1125(d)(1)(A) (2005).

2.      Section 1125(d)(1)(B)(i) further provides that [i]n determining whether a person has a bad faith intent . . ., a court may consider factors such as, but not limited to:

<blockquote>

(I)      the trademark or other intellectual property rights of the person, if any, in the domain name;

(II)    the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III)   the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV)   the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V)    the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI)   the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use,

</blockquote>

9

the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time or registration of such domain names, without regards to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of Subsection (c)(1) of this section.

15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX). Section 1125 further states that bad faith intent cannot be found in any case where the court determines that the person violating the right to the mark holder "believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii).

3. Here, the default judgment of liability includes a finding of liability on Count III of the complaint, which asserts a violation of 15 U.S.C. § 1125(d). However, we note that even absent a default finding, the evidence of the prove-up hearing is sufficient to establish Mr. Mulcahy's liability under Section 1125(d)(1). The evidence shows that Mr. Mulcahy, doing business as Teleartist, registered the domain name rightonfutons.com on February 27, 2003, after the effective date of the ACPA. The evidence further shows that Mr. Mulcahy used that domain name to direct persons to Futonz.com, a website for Futonz, Inc., which was a business operated by Mr. Mulcahy

10

in competition with Slat Rack. The evidence further established that once confronted by Slat Rack, Mr. Mulcahy attempted to sell the domain name to Slat Rack for consideration. Accordingly, the evidence shows that Mr. Mulcahy registered, trafficked in and used the domain name rightonfutons.com.

4.     The evidence further shows that the domain name rightonfutons.com is "identical or confusingly similar" to Slat Rack's trademark, "RIGHT-ON FUTON," and that Slat Rack's mark was distinctive in February 2003, at the time of Mr. Mulcahy's registration of his domain name. "Marks are classified in five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful." *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 727 (7th Cir. 1998). Those "terms that are either suggestive, arbitrary, or fanciful are automatically entitled to trademark protection because they are inherently distinctive." *Id.*

5.     Plainly, the RIGHT-ON FUTON mark is not a generic term, which is defined as one "that is commonly used and does not identify any particular source." [*Platinum Home Mortgage Corp.*, 149 F.3d at 727.] We think that the RIGHT-ON FUTON mark is best categorized as suggestive, as the mark combines the word "futon" (which describes the product) with the exhortation "right-on" (which has no necessary connection with futon products). We do not consider the mark to be merely descriptive, which is defined as a mark that does nothing more than "describe[] the ingredients, qualities or characteristics of an article of trade or a service," and thus is "a poor means of distinguishing one source of services from another." *Id.* (quoting *Liquid Controls Corp. v. Liquid Controls Corp.*, 802 F.2d 934, 936 (7th Cir. 1986)). Moreover, even if deemed descriptive, we find that the significant publicity that has been given to the RIGHT-ON

11

FUTON mark has caused the mark to be associated with Slat Rack, thus giving it secondary meaning and entitling it to trademark protection. *Id.*

6.    In addition, the evidence shows that the rightonfutons.com domain name is confusingly similar to the trademark "RIGHT-ON FUTON." The case law is clear that making a singular word plural, or vice-a-versa, or eliminating hyphenation does not serve to eliminate confusing similarity. *See, e.g., Sporty's Farm L.L.C. v. Sportsman's Market, Inc.,* 202 F.3d 489, 497-98 (2d Cir. 2000) (domain name "Sportys" was indistinguishable from the trademark "Sporty's," despite the absence of a apostrophe); *Graduate Management Admission Council v. Raju,* 267 F. Supp. 2d 505, 511 (E.D. Va. 2003) (domain name "GMATPLUS" was confusingly similar to plaintiff's registered mark "GMAT"); *E. & J. Gallo Winery v. Spider Web's Ltd.,* 129 F. Supp. 2d 1033, 1043 (S.D. Tex. 2001) (domain name "ErnestandJulioGallo.com" held to be nearly indistinguishable from the trademark "Ernest & Julio Gallo"); *Weiss Noodle Co. v. Golden Caracknel & Specialty Co.,* 290 F.2d 845, 847 (C.C.P.A. 1961) (hyphenated word "Ha-Lush-Ka" held indistinguishable from unhyphenated word "Haluska").

7.    The evidence also is sufficient to establish that, considering the factors set forth in Section 1125(d)(1)(B), Mr. Mulcahy had a "bad faith intent to profit" from Slat Rack's mark. The evidence supports the proposition that Mr. Mulcahy's adoption of the rightonfutons.com domain name for use in a business in which he competed with Slat Rack was intended to divert customers, as it would direct customers who erred in typing Slat Rack's domain name "rightonfuton.com" by adding an "s" to the website of a business owned and operated by Mr. Mulcahy. Given the publicity given to the RIGHT-ON FUTON trademark through Slat Rack's, the evidence supports the inference that Mr. Mulcahy knew of Slat Rack's mark "RIGHT-ON FUTON" and thus knew that the domain

name he adopted was confusingly similar to that mark. And, Mr. Mulcahy's activity in attempting to sell the domain name to Slat Rack after being confronted by Slat Rack is further evidence of a bad faith intent to profit.

8.       Moreover, the factors that might militate against a finding of bad faith are not supported by the evidence: Mr. Mulcahy had no trademark or other intellectual property right in the domain name (Section 1125(d)(1)(B)(i)(I)); the domain name does not contain Mr. Mulcahy's legal name or some name that is otherwise commonly used to identify him (Section 1125(d)(1)(B)(i)(II)); Mr. Mulcahy had no prior use of the domain name, and did not use it in a bona fide noncommercial way, or any other way, that suggests fair use (Section 1125(d)(1)(B)(i)(III-IV)); and, as indicated above, Slat Rack's mark is distinctive (Section 1125(d)(1)(B)(i)(IX)). Nor is there any evidence that would support the proposition that Mr. Mulcahy "believed in and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful" (Section 1125(d)(1)(B)(ii)).

9.       In light of the finding of liability under Section 1125(d), Slat Rack "may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damage in the amount of not less than $1,000 and not more than $100,000 per domain name, as the Court considers just." 15 U.S.C. § 1117(d). Here, while Slat Rack's complaint sought a variety of other damages (including its lost profits, defendant's profits, treble damages, and punitive damages), at the prove-up hearing Slat Rack elected to forego those other potential damages recoveries and to elect to seek a recovery of statutory damages. Slat Rack argues that the appropriate assessment of statutory damages should be in the amount of $30,000.

10.      The statute does not provide the express guidance as to the factors that should inform a court's decision as to what the statutory damage would be "just" within the statutory range of

$1,000 to $100,000 per domain name. In deciding what would be just in this case, we have considered a number of decisions awarding the statutory damages for violations of Section 1125(d) under varying circumstances. *See Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 549-51 (6th Cir. 2003) (affirming district court decision awarding $5,000 in statutory damages where the defendant registered the domain name fordworld.com, sought to sell the domain name to Ford, but never operated a website using the domain name); *Raju*, 267 F. Supp. 2d at 512-13 (awarded $100,000 in statutory damages per domain name for GMATPLUS.com and GMATPLUS.net, based on the defendant's "blatant use of GMAT's mark in his domain names and his use of the site to market sell copyrighted GMAT materials"); *Mirage Resorts, Inc. v. Cybercom Productions*, 228 F. Supp. 2d 1141, 1142 (D. Nev. 2002) (in a default case, awarded $100,000 in statutory damages for defendant's use of plaintiff's trademark name "Golden Nugget" in a domain name for a pornographic website with a link to an onsite casino); *Victoria's Cyber Secret v. V Secret Catalog, Inc.*, 161 F. Supp. 2d 1339, 1356 (S.D. Fla. 2001) (awarded $10,000 for each domain name that used the Victoria Secret mark, where the mark had not been used or linked to any website but where, after being confronted by Victoria Secret, Victoria Cyber Secret refused the transfer the domain names); *E. & J. Gallo Winery v. Spider Web Ltd.*, 129 F. Supp. 2d 1033, 1047-48 (S.D. Tex. 2001) ($25,000 in statutory damages awarded where the district court found that while acting in bad faith, the defendant "did not use the domain name to do anything egregious as, for example, using the website to sell poor quality wine or to market tawdry items bearing the Gallo name," and where there was no evidence of any lost business, but where the use of the domain name to run a website regarding the dangers of alcohol consumption "placed Gallo at risk of losing business and of having its business reputation tarnished").

14

11.    In this case, as in any case of cyber squatting under Section 1125(d)(1), there is a finding of bad faith on the part of the defendant; thus, that factor alone cannot auger for a statutory damage award at the higher end of the permissible range. Unlike the cases where the maximum statutory damage award was made, there is no evidence here that Mr. Mulcahy used the domain name to market Slat Rack's product in an unauthorized way, as in the *Raju* case, or used the domain name to link to a site that unavoidably would tarnish Slat Rack's name and good will, as was the case with the link to a pornographic website in the *Mirage Resorts* case. On the other hand, Mr. Mulcahy put the domain name into active use to direct customers to a business he operated in competition with Slat Rack, thus distinguishing this case from those in which there was no use or competitive activity by the defendant, such as *Ford Motor*, which affirmed a $5,000 award, and *Victoria Cyber Secret*, which involved $10,000 awards for each domain name.

12.    In determining the statutory damages that are just here, we also give consideration to the fact that the competitive use of the website by Mr. Mulcahy apparently was for a short period of time (April to July 2004), and that there is no evidence of lost sales or damage to plaintiff's reputation. On the other hand, we also take into consideration that although Mr. Mulcahy ceased using the domain name within a few weeks of being contacted by plaintiff's trial counsel, thereafter Mr. Mulcahy rebuffed Slat Rack's request for transfer of the domain name: Mr. Mulcahy offered only to sell it to Slat Rack, and suggested the possibility that he instead would sell it to another person if Slat Rack refused to pay for it (PX 28). We consider this latter point significant, as there is authority for the proposition that one of the purposes of the statutory damages provision is not only to provide a monetary remedy for a plaintiff's losses, but also "to discourage wrongful conduct." *E. & J. Gallo Winery v. Spider Web's Ltd.*, 286 F.3d 270, 278 (5th Cir. 2002) (quoting *F.W.*

15

*Woodworth Co. v. Contemporary Arts, Inc.* 344 U.S. 228, 233 (1952)). In light of these various considerations, we recommend that an award of $30,000 in statutory damages would be "just" in this case.

13.    In addition to statutory damages, **Slat Rack** seeks an order requiring Mr. Mulcahy to transfer the domain name rightonfutons.com to **Slat Rack**. That is a permissible remedy for violation of Section 1125(d)(1)(A). *See* 15 U.S.C. § 1125(d)(1)(C) ("in any civil action involving the registration, trafficking or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark"). That remedy has been granted by courts in other cases. *See, e.g., E. & J. Gallo Winery,* 129 F. Supp. 2d at 1048, *affirmed,* 286 F.3d at 280-81; *Raju,* 267 F. Supp. 2d at 513-14; *Mirage Resorts,* 228 F. Supp. 2d at 1143; *Victoria's Cyber Secret,* 161 F. Supp. 2d at 1357. We believe that transfer of the domain name is an appropriate remedy in this case as well, and therefore recommend it.

14.    Slat Rack also seeks an injunction barring Mr. Mulcahy, and those acting in concert with him, from infringing the RIGHT-ON FUTON trademark. Injunctive relief is a permissible remedy for violation of Section 1125. *See* 15 U.S.C. § 1116(a). As the foregoing authorities made clear, injunctive relief is routinely granted for established violations of Section 1125(d), and we recommend that it be awarded here, on the terms set forth below.[2]

15.    Finally, Slat Rack seeks and award of $7,980.00 in attorneys' fees and $195.00 in costs as the prevailing party. We recommend that the request for costs be granted in the amount of $195.00. Under FED. R. CIV. P. 54(d)(1), "costs other than attorneys' fees shall be allowed as a

---

[2]In its complaint Slat Rack also sought a permanent injunction barring Mr. Mulcahy or those acting in concert with him from engaging in unfair competition in connection with the RIGHT-ON FUTON trademark. At the prove-up hearing, Slat Rack withdrew that separate claim for injunctive relief.

16

course to the prevailing party unless the court otherwise directs . . . ." Consistent with that directive, the prevailing party is *prima facie* entitled to cost and it is incumbent on the losing party to overcome the presumption." *McGill v. Faulkner*, 18 F.3d 456, 459 (7th Cir. 1994). Typically, the only bases to deny a prevailing party costs are misconduct by the prevailing party worthy of a penalty, or the losing party's inability to pay. *Weeks v. Samsung Heavy Industry Co., Ltd.*, 126 F.3d 926, 945 (7th Cir. 1997). Here, there is no evidence of any misconduct by Slat Rack in pursuing this litigation. Nor is there evidence that Mr. Mulcahy has an inability to pay court costs. The "inability" to pay exception to the prevailing party's right to recover costs requires proof that payment would not merely be a burden, but rather that the losing party is indigent. *Reed v. International Union*, 945 F.2d 198, 204 (7th Cir. 1991). A party is indigent if he is "incapable of paying the court imposed costs at this time or in the future." *McGill*, 18 F.3d at 459. There is no basis in the record to conclude that Mr. Mulcahy meets this definition of indigency. To the contrary, while his corporation Futonz, Inc. declared bankruptcy in the fall of 2004, the petition shows that Mr. Mulcahy in the proceeding year received $104,000 from that business (PX 30). In addition, it appears that Mr. Mr. Mulcahy remains in business through another entity: that is suggested by the fact that shortly after Futonz, Inc. declared bankruptcy, Mr. Mulcahy registered a domain name "Sit Sleep & Storage" (PX 33), which is the website for the Bedding Experts, Inc., a business that sells a variety of furniture, including futons (PXs 31-32).

16.     We now turn to the question of attorneys' fees. In a case where a plaintiff prevails on a claim under Section 1125(d), "[t]he court in exceptional cases may award reasonable attorneys' fees to the prevailing party." 15 U.S.C. § 1117(a). Thus, unlike the case in certain fee-shifting statutory schemes, a prevailing party on a trademark infringement case is not automatically entitled

to recover attorneys' fees. Rather, the Court has the discretion to award fees, and only in an exceptional case. While many of the cases involving findings of liability under Section 1125 have awarded the prevailing party attorneys' fees, *see Raju*, 267 F. Supp. 2d at 514; *Victoria's Cyber Secret*, 161 F. Supp. 2d at 1356; *Mirage Resorts*, 220 F. Supp. 2d at 1142-43, courts have not universally done so. *See Ford Motor Co.*, 342 F.3d at 545 (district court awarded only statutory damages); *E. & J. Gallo Winery*, 129 F. Supp. 2d at 1048 (court awarded only statutory damages). Moreover, these cases suggest that the amount of statutory damages awarded are not always an accurate proxy for whether the Court considers the case to be exceptional so as to justify an award of attorneys' fees. Both cases that awarded the maximum statutory damages also awarded attorneys' fees. *See Raju, Mirage Resorts*. However, one decision awarded attorneys' fees when the statutory damages per domain name was only $10,000, *see Victoria's Cyber Secret*, whereas another decision declined to award attorneys' fees when the statutory damages award was $25,000. *See E. & J. Gallo Winery*.

17.    In deciding whether attorneys' fees should be awarded in this case, we begin with the question of whether the case is an exceptional one. The Seventh Circuit has described an exceptional case as one in which the infringing acts are malicious, fraudulent, deliberate or willful. *E.g., BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1099 (7th Cir. 1994). The fact that Mr. Mulcahy acted in bad faith cannot by itself make the case exceptional, as every violation of Section 1125(d)(1) requires a finding of "bad faith intent to profit." If that finding of bad faith were sufficient to justify an award of attorneys' fees, then fees would be mandatory, and not available only in an exceptional case. Thus, we consider whether there is something more here, some kind of

aggravating circumstances, that separates Mr. Mulcahy's conduct here from a typical "bad faith intent to profit" case.

18.    We conclude that there is: specifically, Mr. Mulcahy's attempt to extract money from Slat Rack for the domain name. Within a few weeks after Mr. Mulcahy was informed of the provisions of Section 1125(d) in June 2004, he stopped using the rightonfutons.com domain name to direct consumers to the futonz.com website. It is reasonable to infer that Mr. Mulcahy stopped using the rightonfutons.com domain name in that fashion because he recognized that the law prohibiting him from that infringing use. However, rather than taking the next reasonable, good faith step of relinquishing the domain name to Slat Rack, Mr. Mulcahy demanded payment for it. Mr. Mulcahy further suggested that absent a payment he might sell the domain name to someone else (which he did not do), or that Slat Rack would have to spend the money to sue him for it (which is precisely what happened). Mr. Mulcahy's initial infringing activity might not have met the definition of the exceptional case, given his prompt cessation of the activity that even Slat Rack described as a "good faith gesture" (PX 24); but we find that Mr. Mulcahy's subsequent demand for payment for transfer of the domain name constituted the kind of malicious and willful conduct that makes this an exceptional case.

19.    We are then left with the question of the reasonable fees to be awarded here. Slat Rack has submitted a petition asking for $7,980.00 in attorneys' fees, consisting of: (a) $7,200.00 for Mr. McGeehan's services, based on 21 hours at $150.00 an hour for the period up to January 17, 2005 (when he was a solo practitioner) and 22.5 hours at the rate of $180.00 an hour for work after that date (when he became affiliated with his current firm); and (b) $780.00 for the services of Thomas R. Fitzsimons, who examined Mr. McGeehan during the prove-up hearing, based on three

hours of work at $260.00 an hour. Having reviewed the declaration submitted in support of the petition, we find the hourly rates to be reasonable for attorneys of the experience of Messrs. McGeehan and Fitzsimons. However, we conclude that a reduction in the reimbursable time is in order.

20. A review of the time entries shows that from June 10, 2004, when he first became involved in the matter, through November 19, 2004, when the default judgment was entered, Mr. McGeehan devoted a total of 13 hours to all activities in the matter. That is a reasonable amount of time to spend in learning about the dispute, sending the cease and desist communications to Mr. Mulcahy, conducting pre-suit investigation, preparing and filing the complaint, and pursuing the default judgement. By contrast, from November 19, 2004 through February 18, 2005, Mr. McGeehan devoted 30.5 hours to the damage prove-up proceedings. That is more time than reasonably necessary to spend in proving up statutory damages and a right to attorneys' fees during a one and one-half hour hearing, in a case where liability was already established and Mr. Mulcahy did not participate in the proceeding. For example, the time records show 11.75 hours in researching and writing a memorandum on statutory damages, and then an additional three hours in drafting the fee petition, which largely cited the same cases. Taking this briefing and research together, we reduce the amount of time reimbursed for this work from 14.75 hours to 7.75 hours. We also note that on February 14 and 15, 2005, Mr. McGeehan spent eight hours preparing for the hearing, which the Court finds is more than was reasonably necessary in light of the fact that: (a) the hearing itself lasted only one and one-half hours, and (b) several hours already had been spent in January and February selecting exhibits, drafting declarations for the witnesses who testified at the prove-up hearing (which largely tracking their hearing testimony). Thus, we reduce amount of time

20

reimbursed for hearing preparation by five hours. We find that it was appropriate for Mr. Fitzsimons to become involved in the prove-up hearing for purposes of eliciting Mr. McGeehan's testimony, and the three hours he billed was a reasonable amount of time for him to spend to prepare for and attend the prove-up hearing.

21. The 12 hours in reductions all involve time that Mr. McGeehan billed at the $180.00 rate, for a total reduction of $2,160.00. These reductions, therefore, result in a recommended fee award of $5,820.00.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that the presiding district judge enter a final judgment on behalf of plaintiff, Slat Rack LLC, and against the defendant Joseph Mulcahy, d/b/a Teleartist, which grants the following relief:

1. A permanent injunction barring Joseph Mulcahy, his employees, agents, representatives and all others in active concert or participation with him, from infringing plaintiff's trademark RIGHT-ON FUTON, including any use of the phrase right-on futon with or without hyphens, singular or plural, and in any other variations.

2. An order requiring Joseph Mulcahy to take all steps necessary to transfer registration of the domain name "rightonfutons.com" to Slat Rack, and barring Joseph Mulcahy (or his employees, agents, representatives, and all others in active concert or participation with him) from registering any other domain name that contains the phrase right-on futon or variations of that phrase.

21

3. An order requiring Joseph Mulcahy to pay Slat Rack statutory damages in the amount of $30,000.00.

4. An order requiring Joseph Mulcahy to pay Slat Rack $195.00 in court costs, pursuant to FED. R. CIV. P. 54(d)(1).

5. An order requiring Joseph Mulcahy to pay Slat Rack the sum of $5,820.00 in attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

The Court further recommends that the district judge retain jurisdiction of the case for purposes of enforcing the judgment.

Specific written objections to this Report and Recommendation may be served and filed within ten business days from the date that this order is served. FED.R.CIV.P. 72(b). Failure to file objections with the district court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *See Videoviews, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

All matters related to this referral having been completed, the Court hereby terminates this referral.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: February 23, 2005**